IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| IMPACT MECHANICAL, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>WALSH CONSTRUCTION CO., URS WASHINGTON DIVISION, PPL MONTANA, LLC, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>Defendants. | CV-12-155-BLG-DWM<br><br>ORDER DENYING WALSH'S MOTION TO STRIKE JURY DEMAND |
| WALSH CONSTRUCTION CO.,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>IMPACT MECHANICAL, INC., and IMI TECHNOLOGY, CORP.,<br><br>Counterclaim Defendants. | |

## I.  INTRODUCTION

This motion requires a determination of whether a unilateral jury waiver in a construction contract can be enforced in the absence of proof that the waiver was

knowing and intelligent. In my opinion such a waiver is unenforceable in this case.

Plaintiff Impact Mechanical filed this suit to collect over $900,000 it claims it is owed for work performed as a subcontractor on the Rainbow Dam project near Great Falls, Montana. Named as Defendants are Walsh Construction Company, the general contractor, URS Washington Division, the engineering firm, PPL Montana, LLC, the owner, and Travelers Casualty and Surety Company of America, the surety for the Rainbow Dam project. Walsh has filed counterclaims against Impact and its associated company, IMI Technology, Corp.

Pending before the Court is a motion to strike Impact's jury demand, brought by Defendant's Walsh, PPL, and Travelers. Doc. 28. These Defendants, referred to as Walsh throughout this Order, seek to enforce a provision in "Exhibit A - Terms and Conditions" of the subcontractor agreement between Impact and Walsh providing that Impact–and only Impact–"waives its right to a trial by jury in any and all disputes or claims arising out of or in relation to this Agreement." Impact has demanded a jury trial and argues it did not knowingly and voluntarily agree to the waiver buried in the middle of a paragraph of one of the eight exhibits to Walsh's form contract.[1]

---

[1] Defendant URS Washington Division and Counter Defendant IMI Technology Corp. are not parties to the contract and have asserted their right to a jury trial in this matter.

An evidentiary hearing was held on July 24, 2013. Two witnesses were called, the two people who negotiated the subcontract, Walsh project manager Lucas Lowney and Impact vice president Jeff Kueffner. The parties stipulated to the admission of Exhibits 501-504, 506-509, and 511-522. Doc. 59. For the reasons discussed below, in my view Walsh has not overcome the presumption against waiver of trial by jury and failed to prove Impact knowingly and voluntarily waived its Seventh Amendment right to a jury trial. Walsh's motion to strike the jury demand is denied.

**II.    ANALYSIS**

The Seventh Amendment of the United States Constitution guarantees the right to a jury trial "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. Am. VII. There is no argument here that the claims at issue here fall within the purview of the Seventh Amendment. That Amendment portends a fundamental right guarded by a presumption against waiver. For a valid waiver of a jury trial in a civil case it must be made knowingly and voluntarily. *Palmer v. Valdez*, 560 F.3d 965, 968 (9th Cir. 2009); *see also Cannon v. Wells Fargo Bank N.A.*, 917 F.Supp.2d 1025, 1057-58 (N.D.Cal. 2013) (contractual jury waivers must be made knowingly, voluntarily, and *intelligently*). There is a strong federal policy favoring jury trials in civil actions, and to ensure the right is

applied uniformly, the right to a jury trial in federal courts is a matter of federal law. *Simler v. Conner*, 372 U.S. 221, 222 (1963). Even so, since jurisdiction in this case is based on diversity of citizenship, the contract itself is interpreted under state law. *Albert v. Joralemon*, 271 F.2d 236, 239 (9th Cir. 1959). The contract paragraph Walsh relies on in asserting grounds to invoke jury waiver also provides the contract is to be governed by the law of Montana, that is, where the Rainbow Dam is situated. Ex. 502, p. 8.

While Montana law recognizes that a contract may provide jury waiver when it has an arbitration clause, a contractual provision restricting a party from enforcing their contractual rights "by the usual proceedings in the ordinary tribunals" is void. Mont. Code Ann. § 28-2-708 (2011).[2] A contractual provision deemed voided is unenforceable, a nullity, with no effect whatsoever. *See Swank v. Chrysler Ins. Corp.,* 938 P.2d 631, 635 (Mont. 1997); *see also Black's Law Dictionary* 1709 (Bryan A. Garner ed., 9th ed., West 2009) (void provisions have no effect whatsoever). Because a jury trial in district court is the "usual proceeding" in an "ordinary tribunal" for determining rights and obligations under a contract, the Court

---

[2] "Every stipulation or condition in a contract by which any party to the contract is restricted from enforcing the party's rights under the contract by the usual proceedings in the ordinary tribunals or that limits the time within which the party may enforce the party's rights is void. This section does not affect the validity of an agreement enforceable under Title 27, chapter 5[pertaining to arbitration]." Mont. Code Ann. § 28-2-708.

proposed at the hearing that § 28-2-708 rendered the jury waiver provision unenforceable, regardless of waiver.

At the Court's direction, the parties filed supplemental briefs addressing the issue. Docs. 62 & 63. The parties, like the court, were unable to find any cases applying § 28-2-708 to unilateral contractual jury waivers. In its supplemental briefing Walsh makes the point that if § 28-2-708 rendered contractual jury trial waivers void, it would be in direct conflict with Article II, § 26 of the Montana Constitution, which expressly authorizes trial without a jury upon lawful consent of the parties.[3] Of course the problem with this logic is that in this case the jury waiver was a unilateral condition imposed by "corporate" that was not amenable to negotiation in the absence of corporate legal counsel's input. Thus the consent issue, like the Phoenix, raises its head once again. In any event, it is unnecessary to decide whether the unilateral jury waiver in this case is void under Montana law because the facts developed at the hearing show that Impact did not knowingly and voluntarily waive a jury trial.

---

[3] "The right of trial by jury is secured to all and shall remain inviolate. But upon default of appearance or by consent of the parties expressed in such manner as the law may provide, all cases may be tried without a jury or before fewer than the number of jurors provided by law. In all civil actions, two-thirds of the jury may render a verdict, and a verdict so rendered shall have the same force and effect as if all had concurred therein. In all criminal actions, the verdict shall be unanimous." Mont. Const. art. II, § 26

The law presumes a party has not waived its fundamental right to a jury trial and this presumption can only be overcome by proof of a knowing and voluntary waiver. *Palmer,* 560 F.3d at 968. The presumption against waiver places the burden of proof on the party seeking to enforce the waiver. *Cannon,* 917 F.Supp.2d at 1058. Whether a party has a right to trial by jury is a question of law reviewed de novo. *Palmer,* 560 F.3d at 968.

Four factors are weighed in determining whether there was a knowing and voluntary waiver of a jury trial: (1) the negotiability of the contract terms considered in light of the negotiations between the parties concerning the waiver provision; (2) the conspicuousness of the waiver provision in the contract; (3) the relative bargaining power of the parties; and (4) the business acumen of the party opposing the waiver. *Cannon,* 917 F.Supp.2d at 1058. Some courts also consider whether the waiving party was represented by counsel. *Id.* The ultimate question is whether the waiver is "unconscionable, contrary to public policy, or simply unfair." *Id.* Measured by these considerations, the facts show all four favor Impact, compelling the conclusion that the unilaterally imposed jury waiver in this contract waiver is unfair.

### A. Negotiability of contract terms and negotiations between the parties concerning the waiver provision

Testimony at the hearing showed that negotiations on the Impact subcontract

for the Rainbow Dam project were conducted by Lowney and Kueffner in several face-to-face meetings, in phone calls, and via email from December of 2009 through March 23, 2010. All of the proof went to negotiations about details and terms of work and the only proof about the jury waiver provision was that Kueffner read the contract before signing it. Walsh contends that nothing was off the table during these negotiations, as evidenced by the modification pertaining to the scope of the work made at Impact's request, Ex. 501, p. 11, and the Rider #1 containing clarifications to the subcontract agreement, *Id.,* p. 35. But Kueffner testified that Walsh refused his attempts to negotiate minor change to how the work was to be performed.

Most importantly, it is undisputed that the jury waiver provision was never discussed at any time during the negotiations. Although he averred in his affidavit that he reviewed all of the contract documents with Kueffner "page by page," doc. 37-1, ¶ 10, Lowney admitted at the hearing that he did not review Exhibit A with Kueffner and that is the boilerplate language of the contract that Lowney said he had no authority to alter absent specific approval by corporate counsel.

It was also established that Exhibit A was part of Walsh's boilerplate contract language, a form in use since at least 2008. Lowney actually referred to Exhibit A as "boilerplate" and admitted that in his six years of negotiating subcontracts for Walsh

7

he had made less than ten changes to the terms and conditions in Exhibit A and that most of these changes involved the indemnification clause. Lowney testified he had never made changes the unilateral jury waiver provision. While Lowney was responsible for negotiating numerous million dollar contracts for Walsh, he had no authority to make any changes to Exhibit A. Any changes to Exhibit A, as the proof showed, had to be approved by Walsh's legal department or by someone in authority from the corporate office.

      Kueffner testified that the focus of the contract negotiations was on the bond, the timing of the payments, the scope and timing of the work to be done, and safety issues. According to Kueffner, he had concerns about the size of the contract, telling Lowney at one point that he was not used to reading large contracts like the one at issue here. Lowney told him it was a standard form contract that all subcontractors were required to sign if they wanted to do business with Walsh. Kueffner admits he read most of the contract, but focused on the provisions describing the work he had to do, and he did not really consider the significance of the jury waiver provision. The hurried reading of a jury waiver clause, without more, does not overcome the presumption against waiver nor does it prove a knowing and intelligent waiver of a fundamental Constitutional right.

### B. The conspicuousness of the waiver provision in the contract

The only thing that could make the jury waiver in this case and contract less conspicuous is if it was contained in fine print in a footnote. Walsh's boilerplate contract buries the unilateral jury waiver clause in the fifth sentence of a six sentence paragraph, in the eleventh article of a twelve article, eight page exhibit, that is one of eight exhibits which total over 30 pages. Ex. 501, p. 8. The jury waiver is not pronounced in any way, it is not set off by bold type, large type, or capital letters and Impact was not asked to initial the provision or sign the page containing the provision. *See Cannon,* 917 F.Supp.2d at 1058. Again, this proof does not rise to the level of proof required to show a knowing and intelligent waiver of a fundamental right.

### C. The relative bargaining power of the parties

Lowney testified that he felt Impact's bargaining power was similar to that of Walsh, but this testimony is belied by the fact that Walsh was a general contractor in charge of about 20 other subcontractors on a $245 million project, of which Impact's portion was $1.3 million. It is a bit disingenuous to argue that the bargaining power of a nationwide sophisticated corporation is on the same level as a mom and pop operation that is committed to finding piece work as opposed to gargantuan projects. Moreover, Kueffner testified that there are half-a-dozen other companies in Montana

that do the same type of work as Impact and that a relationship with PPL was very desirable to Impact because performing well on the project would mean more work for PPL in the future. Once again Walsh's proof on this factor is not persuasive.

### D. Impact's business acumen

Walsh invokes the representations on Impact's website that it has "a combined 57 years of experience in the energy industry" and claims Signal Peak Mine, Conoco Phillips, CHS, Stillwater Mining Company and MillerCoors as clients as proof that Impact is a sophisticated player in the energy construction industry and should be held to that standard. Ex. 522. Walsh also elicited testimony from Kueffner on cross-examination that he had an attorney review parts of the subcontract, but that he did not ask the attorney to review the unilateral jury waiver provision.

On the other hand, Impact is a relatively small company that Kueffner and his wife started in 2006, just three or four years before the events giving rise to this lawsuit. Kueffner testified that the Rainbow Dam project was the largest project Impact had ever been awarded and the only project requiring a performance bond. Kueffner also testified that his company had never been involved with a project that descended into litigation. The proof shows that while Impact does engage in piece work contracts, it lacks the sophistication and acumen of Walsh when it comes to business practices or contract negotiations.

### E. Considering all the factors, Impact did not knowingly and voluntarily waive a jury trial.

The essence of Walsh's argument is that Kueffner read the contract and signed it so he must be bound by its terms. While that assertion may be enough to bind Impact to an ordinary contract provision, the unilateral waiver of the fundamental Seventh Amendment right to a jury trial is no ordinary contract provision. Under federal law, Walsh is required to prove Impact knowingly and voluntarily waived a jury trial. Because the first three considerations strongly favor Impact and the fourth is either neutral or slightly in favor of Impact, the compelling conclusion based on the proof presented is that Walsh has not met its burden.

The jury waiver provision was not negotiated, it was never even discussed. All subcontractors were subject to Walsh's "Terms and Conditions" if they wanted to do business with Walsh. Any argument that Walsh would have stricken the unilateral jury waiver provision if Impact had asked is not credible.

Furthermore, there is nothing conspicuous about the jury waiver provision at issue here.

There is no question that Walsh had the superior bargaining power. The evidence at the hearing established that the Impact subcontract was only $1.3 million of a $245 million project and that the Rainbow Dam subcontract was highly desirable for Impact because it would likely mean more PPL Montana contracts in the future.

It was also proved that there were other companies in Montana offering the same services as Impact. The unfairness of the jury waiver clause relating to bargaining power is particularly accentuated when considered in light of the fact that Walsh retained its right to a jury trial while requiring Impact to waive it.

### III. ORDER

Accordingly, **IT IS ORDERED** that Walsh's Motion to Strike Jury Demand (doc. 28) is **DENIED**.

Dated this 8th day of August, 2013.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT